THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* FREDDIE RUIZ RAMOS, Defendant and Appellant.

No. CR-70-81.        Decided April 1, 1971.

---

*Enrique Miranda Merced* for appellant. *Gilberto Gierbolini, Solicitor General,* and *Adolfo Negrón Cruz, Assistant Solicitor General,* for The People.

MR. ACTING CHIEF JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Appellant was accused, convicted, and sentenced for the commission of an offense of grand larceny consisting in that on February 7, 1969, he took from the 11th floor of the Industrial Development Building, located in Hato Rey, a floor polishing and scrubbing machine owned by the Industrial Development Administration of Puerto Rico, valued at more than $100 which he appropriated for his own benefit and use.

In this appeal he assigns the commission of the following

### "Sole Error

"The trial court erred in finding defendant guilty and sentencing him, despite the fact that the prosecuting attorney did not establish that the identification of which defendant was object *during the trial* (by the only witness who tended to connect him with the facts charged) was not tainted by the illegal identification of which defendant had been object *before the trial, United States* v. *Wade,* 388 U.S. 218, 18 L. Ed.2d 1149, 87 S.Ct. 1926; and in spite of the fact that the identification of which defendant was object in person, *before the trial,* was so unnecessarily suggestive and conducive to an irreparably mis-

taken identification that he was denied the due process of law, *Stovall* v. *Denno,* 388 U.S. 293, 18 L. Ed.2d 1199, 87 S.Ct. 1967; and also despite the fact that the identification of which defendant was object, by a photograph, *before the trial,* was so impermissibly suggestive as to give rise to a very substantial likelihood of an irreparably mistaken identification. *Simmons* v. *United States,* 390 U.S. 377, 2 CrL 3153." (Page 4 of defendant-appellant's brief.)

Víctor Manuel Pérez was the only witness for the prosecution who identified defendant-appellant as the author of the offense. He testified that he was an employee of Provision Service and that he saw defendant on February 7, 1969. "I was rendering service [he says] at the 11th floor of the Industrial Development building and when I opened one of the doors which leads to the exit stairs, I opened the door and met Freddie Ruiz Ramos who was carrying a floor polishing machine. He told me these words in a quite deceitful manner, 'that he had been waiting for the elevator for some time and that as it did not come he had decided to go down the stairs. I decided to open the door for him and he went inside.' " He described him as wearing jeans and shirt, he was spattered with paint and had a protective helmet of the type worn by workers. He also testified that he had seen defendant, when he opened the door, with a polishing machine on the last step of the stairs which was next to the door; that appellant asked him to hold the door while he entered; that he held it for him and appellant went into the elevator.

Defendant introduced an alibi as defense.

From the record it appears that witness Víctor Manuel Pérez did not know defendant prior to the day of the events. The first time he saw defendant was when he opened the door and defendant was on the last step next to the door. At that moment the witness observed the defendant for less than half a minute since he saw him until he opened the door and defendant went into the elevator. The witness did not

find that there was anything strange in the situation; that something normal and common was happening there. How was it that witness Pérez subsequently identified the person he saw on February 7 with the floor polishing machine?

The procedure followed by the police for defendant's identification is explained in the examination of Pérez himself. Let us see the transcript pertinent to the incident:

"Q. And your only intervention with defendant is that he states 'look, hold the door for me while I go through,' and you held it?

A. Yes.

Q. Then he goes into the elevator and you do not know anything else?

A. Nothing else.

Q. What span of time did that intervention last?

A. Less than half a minute.

Q. Less than 30 seconds?

A. No, less than half a minute.

Q. I ask you, when did you see defendant again?

A. If I remember correctly, March 5.

Q. What was the date of the events?

A. February 7.

Q. That is to say that more than a month has elapsed since the date when you allegedly opened the door for him and the date when you saw defendant again. Where did you see defendant again?

A. First I saw him in a photograph which the detective showed me and then in person.

Q. A photograph?

A. Yes, sir.

Q. More than one?

A. One photograph. I saw some others but I only saw one where I could identify him.

JUDGE:

Q. Excuse me. Repeat that to me.

A. That is, when I went to the police station at Bolivia Street and they showed me about 200 photographs and I could not find him there. It was not until the next day when the detective came and showed me a photograph and as they suspected him I

could see the photograph and I said 'that is the person whom I saw.'

Q. On what day did you go to the police station?

A. That was on a Saturday. On Friday the events happened and I went to the file and saw about 200 photographs and I could not find him there.

Q. At least in those you could not find him?

A. No, sir.

Q. And then when was it that the detective went to your house?

A. They did not come to my house, to my place of work.

Q. When?

A. I think that on March 5 if I remember correctly.

Q. More or less the same day that you saw this man at La Princesa?

A. Exactly.

Q. And how many photographs did the Detective show you when they went where you work?

A. Only one.

Q. And whose photograph was that?

A. Ramos'.

Q. How was Ramos dressed in that photograph?

A. In that photograph he had a white sweater and the pants I cannot remember.

Q. Was it a full body?

A. Full body.

Q. Was the face well defined?

A. Yes, sir.

Q. What happened at La Princesa? You say that they took you to La Princesa to see him in person?

A. Yes, sir.

Q. And that was after they had showed you the photographs?

A. That was on the same day.

Q. But I ask you whether it was after they showed you the photograph?

A. Yes.

Q. And what happened at La Princesa?

A. The Detective went to La Princesa, took him out and told me to be on the alert and make sure whether he was the same person whom I had seen and when I saw him he climbed

into the car and I said 'yes, that is he.' They took him to the police station at Bolivia Street and he was examined again there.

Q. Besides defendant how many other inmates of La Princesa were brought here before you?

A. Nobody else.

Q. Only defendant?

A. Yes, sir. (Tr. Ev. 13 to 17.)

.     .     .     .     .     .     .     .

JUDGE:

Q. Sir, I ask you today whether you have told the prosecuting attorney and the colleague that you say that the gentleman whom you saw was this man?

A. Yes, sir, and he was slenderer.

Q. He was slenderer?

A. Yes, sir.

Q. I ask you whether or not you are sure about that today.

A. Yes, sir, I am completely sure.

Q. I ask you sir, if the certainty which you have today, that is to say, of saying that on the day of the events the one you saw with the polishing machine was Ramos . . .

A. Yes.

Q. . . . That is due, excuse me, I have not finished, that certainty which you have, that identification which you make today of Ramos, is it due to the photograph you saw?

A. To the photograph and the person; that I saw him, Your Honor.

Q. Then your certainty relies on the photograph or on what you remember? (Tr. Ev. 18, 19.)

JUDGE:

..     .     .     .     .     .     .     .

Q. Sir, you told me when you answered that it was on the basis of the photograph and that you saw him; did you refer to the fact that you saw him the day of the events or the day you saw him at La Princesa?

A. To the day of the events.

Q. On the day of the events?

A. Yes, sir.

Q. Then, I should understand by the answer that you referred to the day of the events and to the photograph?

A. Exactly.

PROSECUTING ATTORNEY:

May I ask a question?

MR. BATISTA:

May I ask a question?

JUDGE:

Afterwards.

PROSECUTING ATTORNEY:

Q. Are you sure that he is the same person whom you saw on February 7 coming down with that machine?

A. Yes, sir.

Q. That was what you said. Was he the same person you saw in the photograph and the same person you saw in jail?

A. Exactly.

Q. And the same person who is here?

A. Yes, sir.

Nothing more.

JUDGE:

Colleague for the defense.

MR. BATISTA:

Q. When the colleague says the jail do you mean that you went to the jail?

A. Exactly.

It is to make it clear for the record.

JUDGE:

Continue.

MR. BATISTA:

Q. How long was this defendant, the day you went to La Princesa, for how long did he talk to you there?

A. Well, we did not talk. I sat in the front of the car and he sat in the back part with the other detectives.

Q. How long?

A. In the car?

Q. Yes. The time when you went to the police station?

A. I would say that approximately an hour.

There are no more questions." (Tr. Ev. 21 to 23.)

■ Defendant's identification during the trial by the witness for the prosecution is the least trustworthy and most

suggestive of all the identifications, especially in a case like the one at bar where that identification is preceded by extrajudicial identifications, also suggestive and of little or no trustworthiness.

Witness Pérez Lebrón, the only one who identified defendant as we have indicated, did not know him, had never seen him before the events, and on that day he saw him for a brief instant, less than 30 seconds, in a situation considered by the witness as normal. There was no reason for the witness to concentrate his attention on the physical features of defendant in that short lapse of time. Defendant's identification on the basis of the remembrance of that brief instant is not trustworthy. On the day following the events the witness was shown at the police station some two hundred (200) photographs, but he could not identify defendant in any of them. A month later the police went to the place where the witness worked and showed him only one photograph of defendant to identify this one whom the police suspected. That same day the detective took the witness to La Princesa jail and there asked him to be on the alert to say whether or not the person whom they were going to take out of La Princesa was defendant. The only inmate that the detective showed to the witness was defendant whom the witness had already identified some moments before in the only photograph which he was shown as that of a suspect.

All the attendant circumstances in this case point to a little reliable and insufficient identification to establish defendant-appellant's guilt beyond a reasonable doubt. See, *People* v. *Gómez Incera*, 97 P.R.R. 243 (1969). The identification made in this case was so suggestive that we would not be mistaken in affirming that it was the police who identified defendant as the author of the offense and not witness Pérez Lebrón. To admit the legality of that identification may lead to an error of justice. See, *United States* v. *Wade*, 388 U.S. 218, 18 L.Ed.2d 1149; *Stovall* v. *Denno*, 388 U.S. 293, 18

L.Ed.2d 1199; *Simmons v. United States*, 390 U.S. 377; 19 L.Ed.2d 1247.

On the grounds stated the judgment appealed from will be reversed and defendant-appellant acquitted.

Mr. Justice Rigau did not participate herein.